IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MELISSA L. TROIA,

        **Plaintiff,**

v.                                           **CIVIL ACTION NO.: 5:23-CV-308**
                                                      Judge Bailey

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## ORDER ADOPTING REPORT AND RECOMMENDATION

Pending before this Court is the Report and Recommendation ("the R&R") [Doc. 23] entered by United States Magistrate Judge James P. Mazzone on April 19, 2024. Therein, the magistrate judge concluded that Plaintiff's Motion for Summary Judgment [Doc. 15] should be granted in part and denied in part, and Defendant's Motion for Summary Judgment [Doc. 17] should be granted in part and denied in part. Further, the R&R advised the parties that any objections to the R&R were due within fourteen (14) days after service. [Doc. 23 at 16—17]. No parties filed objections within the prescribed timeframe. Accordingly, this matter is ripe for adjudication. For the reasons contained herein, this Court will adopt the R&R in its entirety.

**I.**     **Introduction**

This action arises out of Plaintiff's application for Disability Insurance Benefits. After considering the parties' briefs, the administrative record, the applicable law, and the Court file, the undersigned is satisfied that oral argument would not substantially aid in

the preparation of this Order. Accordingly, the undersigned would conclude that this matter should be remanded as set forth more fully below.[1]

## II. Factual/Procedural History

Plaintiff filed an application for Disability Insurance Benefits on May 25, 2021, alleging disability beginning on September 5, 2019. R. 223-234.[2] Plaintiff's claim was denied initially and upon reconsideration. R. 143-146; R. 147. An administrative hearing was held on December 15, 2022. R. 40-86. On January 11, 2023, the ALJ (Administrative Law Judge, Karen Kostol) issued an unfavorable decision. R. 7-26. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-6. Plaintiff then filed the instant action. [Doc. 1].

## III. ALJ Decision

### A. The Five-Step Evaluation Process

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

---

[1] This Court extends its gratitude to the magistrate judge for preparing an extensively sound R&R. Given the detailed background and legal analysis often present in the applications for Disability Insurance Benefits matters, this Court recognizes the extensive research and drafting undertaken by the magistrate judge in his preliminary adjudication. Accordingly, this Court has largely plagiarized the R&R herein.
[2] Plaintiff amended her alleged onset date to April 24, 2020, at the Administrative Hearing.

42 U.S.C. § 423(d)(2)(A). The Social Security Administration uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.
>
> [Before the fourth step, the residual functioning capacity of the claimant is evaluated based "on all the relevant medical and other evidence in your case record . . ." 20 C.F.R. §§ 404.1520; 416.920.]
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520; 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. ***Richardson v. Califano***, 574 F.2d 802, 804 (4th Cir. 1978). The burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. ***Hicks v. Gardner***, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be

3

"disabled" or "not disabled" at one of the five steps, the process does not proceed to the next step. *Id.*

## B. ALJ Findings

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2022. R. 13. The ALJ further found that Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of April 24, 2020, through her date of last insured of September 30, 2022. Id.

Through the date of last insured, the ALJ found that Plaintiff had the following severe impairments: cervical spondylosis, degenerative disc disease of the lumbar spine, lumbar radiculopathy, major depressive disorder, generalized anxiety disorder, panic disorder, borderline personality disorder, post-traumatic stress disorder (PTSD), cardiomyopathy, hypertension, nicotine and cannabis use, mitral valve prolapse, history of irritable bowel syndrome with chronic constipation, diabetes mellitus type II, headaches, obesity, fibromyalgia, asthma/chronic obstructive pulmonary disease, hypothyroidism, and trochanteric bursitis. Id. The ALJ found that, through the date of last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). R. 14.

The ALJ determined that, through the date of last insured, Plaintiff had the following residual functional capacity:

> [t]o perform light work as defined in 20 CFR 404.1567(b) except the [Plaintiff] can never climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; is capable of frequent reaching in any direction with the bilateral upper extremities; is capable of frequent feeling, fingering, and handling with the bilateral upper extremities; must avoid concentrated exposure to extreme cold, extreme

4

heat, excessive vibration and irritants such as fumes, odors[,] dust and gases, poorly ventilated areas, and chemicals and must avoid all exposure to any hazards such as dangerous moving machinery and unprotected heights; requires no commercial driving; and is capable of simple, routine, and repetitive tasks that entail only simple decisions, with no fast-paced production requirements (such as fast paced assembly like work or high volume piecemeal quotas) and with few workplace changes; is capable of no interaction with the general public and occasional interaction with coworkers and supervisors (such that the [Plaintiff] is capable of working with things rather than with people); and must be afforded the opportunity for brief 1 to 2 minute changes of position at intervals not to exceed 30 minutes without being off task.

Through the date of last insured, the ALJ determined that Plaintiff was unable to perform any past relevant work. R. 24. The ALJ further determined that, through the date of last insured and considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy that Plaintiff could have performed. R. 25. Finally, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from April 24, 2020, Plaintiff's amended alleged onset date, through September 30, 2022, the date of last insured. R. 26.

## IV.     Motion for Summary Judgment

Plaintiff filed a Motion for Summary Judgment and a brief in support thereof on February 2, 2024. [Docs. 15 and 15-1]. Defendant filed a Motion for Summary Judgment and Memorandum in Support on March 4, 2024. [Doc. 17]. Plaintiff filed a Reply brief on April 17, 2024. [Doc. 22].

### A.     Arguments of the Parties

#### 1.     Plaintiff's Arguments

Plaintiff has set forth four assignments of error. Specifically, Plaintiff argues that the ALJ (1) improperly ignored Plaintiff's cane usage; (2) violated agency policy by

deviating from a persuasive medical opinion without explanation or supporting rationale contrary to SSR 96-8p; (3) failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace; and (4) failed to adequately consider and evaluate Plaintiff's headaches consistent with agency policy. Plaintiff requests that this matter be remanded for further proceedings. [Doc. 15-1].

### 2. Defendant's Arguments

Defendant argues that Plaintiff has not demonstrated that a cane was medically required. Defendant further argues that the ALJ properly evaluated the prior administrative medical findings. Defendant contends that the ALJ was not required to adopt a specific limitation to account for Plaintiff's moderate limitation in concentration, persistence, or maintaining pace. Defendant further argues that the RFC assessment captured Plaintiff's credibly established limitations, including those related to migraine headaches, is substantially supported by the evidence, and permits meaningful review. Defendant requests that Plaintiff's Motion be denied, and the Commissioner's decision be affirmed. [Doc. 17].

## C. The Standards

### 1. Summary Judgment

"Summary Judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" **Lawson v. Union County Clerk of Court**, 828 F.3d 239, 247 (4th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

### 2. Judicial Review

The Court's review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards and whether the ALJ's factual findings are supported by substantial evidence. ***Rogers v. Kijakazi***, 62 F.4th 872, 875 (4th Cir. 2023).

"Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." ***Hays v. Sullivan***, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Pierce v. Underwood***, 487 U.S. 552, 564-65 (1988) (internal citations and quotations omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" ***Laws v. Celebrezze***, 368 F.2d 640, 642 (4th Cir. 1966), *overruled by implication on other grounds,* ***The Black and Decker Disability Plan v. Nord***, 538 U.S. 822 (2003).

## D. Discussion

This Court will take each of Plaintiff's four points of alleged error in turn.

### 1. Cane usage

Plaintiff argues that, while the ALJ acknowledged Plaintiff's claim that she required a cane to ambulate, the ALJ made no further findings or analysis regarding Plaintiff's cane usage. [Doc. 15-1 at p. 7]. Plaintiff maintains that this is reversible error which requires remand because the need for a hand-held assistive device may preclude work, and because the ALJ's failure to analyze Plaintiff's cane usage precludes meaningful review of the ALJ's decision. [Id. at p. 7-8]. In response, Defendant argues that Plaintiff has not demonstrated that a cane was "medically required," as is necessary under Agency policy.

Thus, remand is not required. After considering the parties' arguments and the applicable law, and for the reasons that follow, this Court is not persuaded by Plaintiff's argument.

Reference to Plaintiff's cane usage is contained within the evidence of record. *See e.g.*, R. 328, 331, 332, 345, 404, 724, 726, 731, 748, 870, 879, 926, and 931. Plaintiff also testified during the administrative hearing that she uses a cane for balance. R. 66-67. She explained that she would fall if she did not use a cane. *Id.* At R. 17, the ALJ noted that Plaintiff "mentioned that she requires a cane to ambulate." Notwithstanding, the ALJ did not specifically analyze whether a cane is medically necessary. Plaintiff claims this is an error that precludes meaningful review of the ALJ's decision. The undersigned does not agree.

Pursuant to Social Security Ruling 96-9p, "[t]o find that a hand-held assistive device is medically required, there must be <u>medical documentation</u> establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all of the time, periodically, or only in certain situations: distance and terrain; and any other relevant information)." **Debra Ann H. v. Kijakazi**, 2022 WL 796817, at * 3 (D.S.C. Mar. 15, 2022) (Hendricks, J.) (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (emphasis added)). Here, there is no medical documentation establishing the need for a hand-held assistive device, such as a cane. To the contrary, the evidence Plaintiff cites in support of her argument is self-reported evidence, or evidence that medical providers have observed the fact of her cane usage (without commenting on its medical necessity). "[S]elf-reports and references in the record from physicians stating only that a claimant presented with a cane are not sufficient to establish medical necessity." **Debra Ann H.**, 2022 WL 796817, at * 3.

8

Because there is no medical documentation in the record establishing Plaintiff's need for a cane, it was not error for the ALJ to exclude Plaintiff's cane usage from her analysis.

Even if it was an error for the ALJ to exclude Plaintiff's cane usage from her analysis, the undersigned is satisfied that this was harmless error because this omission does not preclude meaningful review of the ALJ's opinion. Additionally, there is no medical documentation establishing Plaintiff's need for a cane, so remand would prove futile in this instance. *See* **Mascio v. Colvin**, 780 F.3d 632, 636 (4th Cir. 2015) ("remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested'").

### 2.   Persuasive Medical Opinion – SSR 96-8p

Plaintiff next argues that the ALJ violated agency policy by deviating from a persuasive medical opinion without explanation or supporting rationale contrary to SSR 96-8p. Plaintiff argues that, although the ALJ found the state agency psychologists (Dr. Joseph Capage, Ph.D., and Dr. Joseph Richard, Ed.D.) to be persuasive, the ALJ nevertheless failed to include the experts' limitation of "brief" to the social interactions with coworkers and supervisors within the RFC. [15-1 at p. 9]. Plaintiff argues that this deviation merits remand because "the failure of an ALJ to proffer an explanation when deviating from a medical opinion found to be persuasive constitutes reversible error." [Id. at p. 10]. Defendant argues that the ALJ was not required to adopt every limitation from the findings of Drs. Capage and Richard simply because the ALJ found their opinions persuasive, and that the ALJ reasonably translated their findings into the RFC assessment provided in the ALJ's opinion. For the reasons that follow, the undersigned would conclude that the ALJ erred in not including a limitation to "brief" interactions with

9

coworkers and supervisors within the RFC. The undersigned would further conclude that said error is not harmless. Therefore, remand is appropriate as to this issue.

SSA 96-8p provides in relevant part as follows: "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at * 7 (SSA July 2, 1996). Therefore, while Defendant is correct that an ALJ is not required to adopt every limitation contained in a medical opinion that the ALJ finds persuasive, an ALJ is required to explain her rationale for deviating from a persuasive medical opinion. Defendant contends that the ALJ did not deviate from the medical experts' opinions in fashioning the RFC. The undersigned disagrees.

In the ALJ's RFC, the ALJ found Plaintiff to be capable of "no interaction with the general public and occasional interaction with coworkers and supervisors (such that the claimant is capable of working with things rather than with people)." R. 16-17. However, in the medical opinions which the ALJ found to be persuasive, the experts both found that Plaintiff "is better suited to work in a setting that calls for no more than **occasional and brief interactions** with supervisors, coworkers, and the general public." R. 117 and 127 (emphasis added). The ALJ failed to include "brief" in the RFC as it relates to Plaintiff's ability to interact with coworkers and supervisors. R. 16-17. This failure is significant because "occasional" and "brief" do not appear to be interchangeable. *See e.g.,* **Matthew F. v. Kijakazi**, 2022 WL 1442243, at *8 (D.N.J. May 6, 2022) (acknowledging "that the term 'occasional,' which refers to the frequency of the interaction, is not the equivalent of the term 'brief and superficial,' which refers to the quality of the interaction") (citing **Greene**

*v. Saul*, 2020 WL 4593331, at * 4 (N.D. Ind. Aug. 11, 2020)); *see also* **Hayes v. Kijakazi**, 2023 WL 22159, at * 12 (M.D.N.C. Jan. 3, 2023) (Auld, M.J.) ("occasional" constitutes a quantitative limitation, while "superficial" constitutes a qualitative limitation); **Melissa A. v. Kijakazi**, 2022 WL 1303404, at * 3 (S.D. Ind. Mar. 17, 2022) (acknowledging "brief" means "short in duration, extent, or length," while "occasional" is defined by the SSA as "from very little up to one-third of the day"). Thus, the ALJ appears to have substantively deviated from the experts' opinions without offering an explanation for this deviation. Such a deviation required an explanation. SSA 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996).

Defendant argues that, even if the ALJ erred in failing to include "brief" in the RFC without explanation, said error is harmless because at step five, the ALJ determined that Plaintiff could perform jobs that require minimal social interaction, including with supervisors and coworkers. R. 26. Indeed, the descriptions of each of these jobs in the Dictionary of Occupational Titles indicates "People – Taking Instructions and Helping" is "Not Significant," and "Talking: Not Present – Activity or Condition Does Not Exist." *See* DICOT 920.687-026 (G.P.O.), 1991 WL 687967 (bander, hand); DICOT 369.687-014 (G.P.O.), 1991 WL 673071 (checker); DICOT 299.587-010 (G.P.O.), 1991 WL 672639 (produce weigher). The undersigned is not persuaded. Case law reflects that a recommendation for superficial or brief contact with coworkers and supervisors could result in a different decision than the one originally reached by the ALJ.[3] *See e.g.*, **Potrebic v. Berryhill**, 2019 WL 1397477, at * 2 (N.D. Ind. Mar. 27, 2019) (acknowledging

---

[3] *Compton v. Commissioner of Social Security*, 2022 WL 678474, at * 3 (W.D.N.C. Mar. 7, 2022) (Conrad, Jr., J.) ("[a] harmless error is one that would not have led to a different result").

evidence that a limitation to superficial contact with supervisors would lead to plaintiff being unable to perform any job). This matter should therefore be remanded for additional proceedings regarding the ALJ's failure to include "brief" in the RFC vis-à-vis interactions with coworkers and supervisors.

### 3. Moderate Limitations in Concentration, Persistence, and Pace

Plaintiff next contends that the ALJ failed to account in the RFC for Plaintiff's moderate limitations in concentration, persistence, and pace. Specifically, Plaintiff argues that the ALJ "must include limitations that address moderate CPP (concentration, persistence, pace) when finding moderate CPP at step three or offer an explanation as to why such limitations were unnecessary." [Doc. 15-1 at p. 14]. Plaintiff contends that the ALJ neither included a limitation nor explained the fact that one was not necessary. Plaintiff argues that the ALJ's opinion does not account for how Plaintiff can sustain activities for the duration of a full workday despite her limitations. Defendant argues that there is no rule which requires an RFC finding to account for a claimant's moderate rating in one or more of paragraph B criteria (such as a moderate limitation in concentration, persistence, or maintaining pace) in any particular way. [Doc. 17 at p. 8]. Defendant further argues that the ALJ's RFC is supported by substantial evidence. For the reasons that follow, the undersigned would agree with Plaintiff.

A court cannot summarily "account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work," because "the ability to perform simple tasks differs from the ability to stay on task." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). There is, however, no "categorical rule that requires an ALJ to always include moderate limitations in

concentration, persistence, or pace as a specific limitation in the RFC." *Id.* If an ALJ finds that concentration, persistence, or pace limitation does not affect a plaintiff's ability to work, it would be appropriate to exclude it from the hypothetical tendered to the vocational expert. *Id.* That is, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* (quoting **Winschel v. Comm'r of Soc. Sec.**, 631 F.3d 1176, 1180 (11th Cir. 2011)).

After reviewing the ALJ's opinion, the undersigned would conclude that it is unclear whether and/or to what extent the ALJ made accommodations in the RFC for Plaintiff's moderate limitations in concentration, persistence, or pace. It is also unclear how the ALJ arrived at the RFC while taking into account Plaintiff's moderate limitation in concentration, persistence, and pace. It is possible that the ALJ took into account this limitation and provided for it within the RFC; it is also possible that the ALJ did not believe an accommodation was necessary. Unfortunately, the ALJ's decision and reasoning on this issue is not evident from the opinion. In this way, this case is more analogous to **Thomas v. Berryhill**, 916 F.3d 307 (4th Cir. 2019), than it is to **Shinaberry v. Saul**, 952 F.3d 113 (4th Cir. 2020).

>  For example, the Court in **Shinaberry** noted the following:
>
> The ALJ also considered Shinaberry's education, GPA, class rank, and IQ scores, as well as Shinaberry's statements that "she does not know how long she can pay attention, sometimes finishes what she starts, and follows spoken instructions not the best." J.A. 33 (internal quotation marks omitted). The ALJ explained that "[t]hese statements, combined with the claimant's trouble with memory tasks as noted during the psychological consultative examination, [also] support the additional mental limitation

13

>restricting the claimant to jobs requiring only simple, routine, repetitive tasks."

*Id*. There is no such analysis in the instant matter. At R. 17, 18, 21, and 22, the ALJ summarized the medical evidence of record and provided an opinion as to whether and to what extent Plaintiff's claims regarding her symptoms were credible. In so doing, the ALJ never disagreed with or found incredible the state agency psychologists' opinions regarding Plaintiff's moderate limitation in concentration, persistence, and pace. On the contrary, the ALJ found the state agency psychological evaluations to be credible, but the ALJ did not explain how the RFC provided for a moderate limitation in concentration, persistence, and pace, or why such a limitation was unnecessary. R. 23-24.

In ***Thomas v. Berryhill***, 916 F.3d 307 (4th Cir. 2019), the Court found that "the ALJ's evaluation of [Plaintiff's] mental impairments for purposes of the RFC contains too little explanation for [the court] to meaningfully review it. Without further explanation, [the court] simply cannot tell whether the RFC finding…properly accounts for [Plaintiff's] moderate limitations in concentration, persistence, and pace." *Id.* at n.5. The same is true here. The Court is therefore satisfied that this matter should be remanded for additional proceedings as to this issue. On remand, the ALJ should explain how the RFC accounts for Plaintiff's moderate limitation in concentration, persistence, and pace; or conversely, why a limitation is not necessary.

### 4. Headaches

Plaintiff next argues that the ALJ failed to adequately consider and evaluate Plaintiff's headaches consistent with agency policy. Plaintiff maintains that the ALJ cherry-picked evidence favorable to the ALJ's decision while ignoring evidence unfavorable to the ALJ's decision, and relied upon medical evidence which was irrelevant

to Plaintiff's headache treatment. Plaintiff contends that the ALJ's findings vis-à-vis Plaintiff's headaches frustrate meaningful review, and that this matter should be remanded for further proceedings on this issue. Defendant argues that Plaintiff did not present evidence of chronic headaches, and that two state agency physicians found that Plaintiff could perform a range of light work. [Doc. 17]. Defendant also contends that the ALJ accounted for Plaintiff's headaches in the RFC assessment by limiting Plaintiff's climbing, operation of heavy machinery, working at unprotected heights, and work requiring operation of a commercial vehicle. [Id.]. For the reasons that follow, the undersigned would agree with Plaintiff.

The ALJ acknowledged that Plaintiff's headaches constitute a severe impairment. R. 13. In so acknowledging, the ALJ recognized Plaintiff's assertion "that she suffers daily headaches lasting several hours at a time, that the pain is throbbing in nature and at a level 9 on a scale of 10, and that the headaches involve nausea, vomiting, and photophobia." R. 17. However, "[a]fter careful consideration of the evidence, the [ALJ found] that [while] Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 18.

Specifically, the ALJ found that Plaintiff "did not present consistent evidence of chronic headaches." R. 19, 22, 23, 24.[4] The ALJ noted that Plaintiff's "[t]reating providers offered Topiramate, Butalbital, and Fioricet, all of which are prescription migraine medications (Exhibit B2F, B5F, B7F, B16F, and B20F)." The ALJ further noted that,

---

[4] This statement is repeated on each of these pages but is not explained further.

15

"[e]ven though [Plaintiff] had some periods during which she experienced headaches, [she] did not report having headache activity specifically at the time of examinations on November 2, 2018, January 27, 2021, March 11, 2021, June 8, 2021, October 11, 2021, and April 6, 2022 (Exhibits B3F, B4F, B7F, and B24F)." Id. These appear to be the only statements from the ALJ in the opinion regarding Plaintiff's severe impairment of headaches. Importantly, the ALJ does not explain how the Plaintiff's headaches were accounted for in the RFC, if at all. This failure precludes a meaningful review of the ALJ's RFC decision vis-à-vis Plaintiff's headaches. **Woods v. Berryhill**, 888 F.3d 686, 692-93 (4th Cir. 2018). Defendant attempts to explain how the ALJ accounted for Plaintiff's headaches within the RFC, but Defendant's attempt does not ameliorate the fact that such an explanation is missing from the ALJ's opinion.

Additionally, the undersigned is troubled by what appears to have been cherry-picked evidence by the ALJ to support the opinion. In rendering the opinion concerning Plaintiff's headaches, the ALJ acknowledges, albeit in very broad terms, the fact of Plaintiff's medical treatment for headaches before pointing to only a handful of medical appointments where Plaintiff apparently did not complain of headaches. R. 19. At those appointments, however, it appears that Plaintiff sought treatment for various medical conditions other than headaches. See e.g., R. 710-711 (treated for gastric reflux); 707 (follow-up GI appointment); 704 (GERD appointment). It is therefore unclear from the ALJ's opinion how these appointments demonstrate that Plaintiff did not show "consistent evidence of chronic headaches." R. 19. See **Monroe v. Colvin**, 826 F.3d 176, 190 (4th Cir. 2016) (finding unclear how ALJ's citation to normal results from pulmonary and respiratory tests and an EEG have relevance to narcolepsy).

16

Plaintiff did seek treatment for her headaches at numerous other appointments as reflected in the record. See e.g., R. 498, 500, 502, 465, 514, 491, 528, 531, 524, 519, 404, 537, 747, 732. Plaintiff underwent an MRI because of her headaches (R. 514), and it was noted that her headaches were likely due to neck pain.[5] R. 404. The ALJ did not, however, address this evidence in a meaningful way within the opinion.

On November 23, 2021, Plaintiff consulted with Dr. Stephen Nutter, consultive medical examiner, where she complained of, among other things, an onset of headaches in 2005. She complained that her headaches occurred daily and lasted for hours with a 9/10 pain rating. The headaches were reported to cause nausea, vomiting, photophobia, and aura was present. Dr. Nutter concluded that physical findings are related to her headaches. R.729-732. The ALJ cited Dr. Nutter's consultive medical examination throughout the opinion but did not cite to or discuss Dr. Nutter's findings relative to Plaintiff's headaches.

The above-noted failures preclude meaningful review of the ALJ's opinion regarding Plaintiff's headaches. This issue should therefore be remanded for further proceedings.

V. **Conclusion**

Accordingly, the R&R [**Doc. 23**] is **ADOPTED** in its entirety. Plaintiff's Motion for Summary Judgment [**Doc. 15**] is **GRANTED IN PART AND DENIED IN PART**, as set forth more fully above. Specifically, the undersigned finds that Plaintiff's Motion for Summary Judgment be denied as to the issue of Plaintiff's cane usage. The undersigned finds that Plaintiff's Motion for Summary Judgment be granted as to the balance of issues.

---

[5] The ALJ found that Plaintiff has the severe impairment of cervical spondylosis. R. 13.

17

Additionally, Defendant's Motion for Summary Judgment [**Doc. 17**] is **GRANTED IN PART AND DENIED IN PART**, as set forth more fully above. Specifically, the undersigned finds that Defendant's Motion for Summary Judgment be granted as to the issue of Plaintiff's cane usage. The undersigned finds that Defendant's Motion for Summary Judgment be denied as to the balance of issues.

As such, this matter is hereby **REMANDED** to the ALJ for further proceedings consistent with this opinion.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further **DIRECTS** the Clerk to mail a copy of this Report and Recommendation to any pro se party by certified mail, return receipt requested, to their last known address as reflected on the docket sheet.

DATED: May 8, 2024.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE